IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD JESSE, | ) |
| Plaintiff, | ) |
| v. | ) No. 10 C 8037 |
| SPHINX SYSTEMHOUSE, INC.; SUBBU ALURI; J.R. RAMMOHAN; SUDAKAR VALLURU; and SAYED KHALEEL, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the court is the motion of defendant Subbu Aluri to dismiss the First Amended Complaint. For the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

Leonard Jesse brings this action against Sphinx Systemhouse, Inc. ("Sphinx") and certain of its principals[1] for breach of an employment agreement, violation of the Illinois Wage Payment and Collection Act, and violation of the Pennsylvania Wage Payment and Collection Law. Jesse alleges that he was hired by defendants in July 2007 pursuant to an Employment Agreement. He claims that on March 13, 2008, defendants terminated his employment without giving

---

[1] The four individual defendants and their alleged positions with Sphinx are Subbu Aluri, a director; J.R. Rammohan, Chief Executive Officer; Sudakar Valluru, an owner and director; and Sayed Khaleel, Senior Manager of Business Development. (First Am. Compl. ¶¶ 4-7.)

him the written notice and compensation that is provided for in the Agreement. It is also alleged that defendants' failure to pay him this compensation violated the wage laws of Illinois and Pennsylvania.

The only defendant who has been served in this action is Subbu Aluri. He moves for dismissal of the complaint.

## DISCUSSION

Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

**A.  Count I (Breach of Contract)**

In Count I of the complaint, plaintiff states that "[o]n July 25, 2007 Plaintiff and Defendants Sphinx and Aluri signed the Employment Agreement." (First Am. Compl. ¶ 15.) A copy of an unsigned Employment Agreement is attached as Exhibit A to the complaint. Plaintiff alleges that the Agreement obligated

"[d]efendants" to pay plaintiff certain compensation and that "[d]efendants" have "breached their agreement to pay the compensation and give the notice described in the Employment Agreement." (First Am. Compl. ¶¶ 16, 25.)

Aluri contends that plaintiff fails to state a breach of contract claim against him because the Employment Agreement does not indicate that Aluri is a party to it and because no facts are alleged that suggest he manifested an intent to be personally bound by it. Plaintiff responds that he has sufficiently alleged that Aluri was a party to the agreement. He adds that the agreement "does not directly contradict" his allegations and is "ambiguous as to whether Defendant Aluri signed the agreement as an agent of Sphinx" or as a party. (Pl.'s Resp. at 5-6.)

The first sentence of the Employment Agreement states: "Agreement made, effective as of 25th July, 2007 by and between Sphinx Systemhouse, with its principal office located at 1202, Harbour Ridge Lane, Downingtown, PA, USA, referred to in this agreement as Employer, and Leonard Jesse . . . ." (First Am. Compl., Ex. A, at 1 (underscoring and italics omitted).)[2] The remaining paragraphs of the contract repeatedly refer to the rights

---

[2] The Agreement that is attached to the complaint actually appears to be a draft. It is unsigned. In the first paragraph, instead of listing plaintiff's address, the agreement states "<Please mention the detailed address>." On the last page, underneath the space for plaintiff's signature, instead of listing his social security number and address, it states "SS# -" and "<Street ADDRESS>," "<CITY>," "<STATE>," and "<ZIP>." Plaintiff does allege in paragraph 15 of the complaint that he and Aluri signed the agreement.

and obligations of only "Sphinx" and "Employee"--for example: "Employee is willing to be employed by Sphinx, and Sphinx is willing to employ employee"; "Sphinx employs, engages, and hires employee"; "Sphinx shall pay employee, and employee shall accept from Sphinx"; and "Employee shall devote all of his time, attention, knowledge, and skills solely to the business and interest of Sphinx." (Employment Agreement at 1-3.) In addition, other language makes clear that there are only two parties to the agreement; the phrases "either party" and "the other" are used, as well as "both parties." (Employment Agreement at 5-6.) Aluri is mentioned nowhere in the agreement except on the last page, where his name appears below the signature line. He is identified as a "Director" of Sphinx, so he would have signed the agreement in his capacity as Sphinx's agent. Given the plain language of the agreement, the mere appearance of Aluri's name does not create any ambiguity regarding whether he was personally a party to it. The agreement directly contradicts plaintiff's allegations that Aluri, individually, was a party to the agreement. Where the allegations of a complaint are contradicted by attached exhibits, the exhibits trump the allegations. <u>Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.</u>, 474 F.3d 463, 466 (7th Cir. 2007). None of the provisions in the Employment Agreement indicates that Aluri was a party, and plaintiff fails to plead any facts suggesting that Aluri otherwise assumed personal liability for Sphinx's

performance. Accordingly, Count I will be dismissed without prejudice.

## B. **Count II (Violation of Illinois Wage Act)**

Count II of the complaint alleges that defendants' failure to pay plaintiff the compensation due to him under the Employment Agreement violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq. (the "Illinois Wage Act"). Aluri argues that officers or agents of employers are deemed to be employers and therefore liable under the Illinois Wage Act only when they "knowingly permit" the employer to violate the provisions of the Act, 820 ILCS 115/13, and that plaintiff has failed to allege that Aluri knew about and permitted Sphinx's violation. In Aluri's view, the allegations that Aluri was a "director and/or officer[]" of Sphinx and "authorized and controlled Sphinx's pay, compensation, and vacation pay practices," First Am. Compl. ¶ 21, are insufficient.

In response, plaintiff relies on his allegations that Aluri signed the agreement and therefore knew of it and that he was a director of Sphinx with supervisory authority over compensation practices. Plaintiff asserts that these allegations are sufficient to state a Illinois Wage Act claim, citing Gross v. Security Associates International, Inc., No. 09 CV 3095, 2009 WL 3837435, at *8 (N.D. Ill. Nov. 17, 2009) (Zagel, J). In Gross, Judge Zagel held that the plaintiff's allegation that the individual defendants

were directors of the corporate defendant allowed for the reasonable inference that they knew of the agreement at issue and knowingly permitted the corporation to violate the statute. Aluri attempts to distinguish Gross by arguing that the plaintiff had also alleged that the individual defendants "personally directed that the amounts owed plaintiffs not be paid," 2009 WL 3837435 at *6, but that was true only as to one of the defendants, Rodriguez, who was discussed separately. As to the other two defendants, Frohman and Howe, the plaintiff had simply alleged that they were directors of the corporate defendant, and Judge Zagel denied the motion to dismiss the Illinois Wage Act claims against those defendants.

Here, plaintiff alleges more than the mere fact that Aluri was a director, the allegation that was found to be sufficient in Gross; he also alleges that Aluri signed the agreement and thus knew about it and that he had supervisory authority over Sphinx's day-to-day affairs. These allegations allow us to draw the reasonable inference that Aluri knowingly permitted Sphinx to violate the Illinois Wage Act. The motion to dismiss the complaint will therefore be denied as to Count II.

C. **Count III (Violation of Pennsylvania Wage Law)**

In Count III of the complaint, plaintiff brings a similar claim against all defendants for violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. § 260.1 et seq. (the

"Pennsylvania Wage Law"). Count III quotes from the choice-of-law provision in the Employment Agreement, which states that "in any action . . . that may be brought arising out of, in connection with, or by reason of this agreement, the laws of the State of PA, USA shall be applicable and shall govern to the exclusion of the law of any other forum, without regard to the jurisdiction in which any action or special proceeding may be instituted." (Employment Agreement at 6.)

Aluri argues that the Pennsylvania Wage Law provides a remedy only for employees who are "based" in Pennsylvania and that plaintiff, who is an Illinois resident, fails to plead that he was based in Pennsylvania so as to give him standing to sue under the statute. Aluri cites a single case in support of his argument, Killian v. McCulloch, 873 F. Supp. 938, 941-42 (E.D. Pa. 1995), in which the federal district court granted defendants' motion for summary judgment on Wage Law claims where the plaintiffs neither resided nor were based in Pennsylvania. Plaintiff, in response, cites to three post-Killian decisions, including one of a Pennsylvania state court, that either rejected or distinguished Killian and allowed non-resident employees to maintain Wage Law claims where the employer was located in Pennsylvania and/or the employment agreement was governed by Pennsylvania law. See Synesiou v. DesignToMarket, Inc., No. 01-5358, 2002 WL 501494, at *2-3 (E.D. Pa. Apr. 3, 2002); Crites v. Hoogovens Technical Servs.,

Inc., 43 Pa. D. & C. 4th 449, 452-58 (Pa. Com. Pl. 2000); Eastland v. Du Pont, No. CIV. A. 96-2312, 1996 WL 421940, at *4-5 (E.D. Pa. July 23, 1996).

The cases cited by plaintiff are well-reasoned and we are inclined to follow them, but in any event the Employment Agreement suggests that plaintiff may have been based in Pennsylvania. The Agreement states that plaintiff would "render" his employment duties "at 1202[] Harbor Ridge Lane, Downingtown, PA, USA and at such other place or places as Sphinx shall in good faith require or as the interest, needs, business, or opportunity of Sphinx shall require." (Employment Agreement at 2.) Thus, it appears that it was at least contemplated that plaintiff would be based in Pennsylvania, and we believe this is sufficient to sustain the claim. Aluri contends that plaintiff was not based in Pennsylvania, but this is an assertion of fact that does not appear in the complaint, so we cannot consider it. As in Eastland, we do not have all the facts regarding plaintiff's employment in the current procedural posture of the case. If it turns out that plaintiff was not based in Pennsylvania and that Sphinx was not a Pennsylvania employer,[3] the issue can be revisited in a summary-judgment motion.

---

[3] Plaintiff argues in his response brief that "[d]efendants' principal place of business is in Downingto[w]n, Pennsylvania." (Pl.'s Resp. at 10.) Although this statement appears to be consistent with the Employment Agreement, which states on the first page that Sphinx's "principal office" is in Downingtown, PA, it contradicts the allegation in the complaint that its principal place of business is in New Jersey, First Am. Compl. ¶ 3.

**CONCLUSION**

For the foregoing reasons, the motion of defendant Subbu Aluri to dismiss the First Amended Complaint [13] is granted as to Count I and denied as to Counts II and III. Count I of the First Amended Complaint is dismissed without prejudice. A status hearing is set for December 7, 2011 at 11:00 a.m.

DATE: November 17, 2011

ENTER: John F. Grady

John F. Grady, United States District Judge